IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD LEE MCINTYRE, #01818692, | § | |
| PETITIONER, | § | |
| | § | |
| V. | § | CIVIL NO. 3:16-CV-499-L-BK |
| | § | |
| LORIE DAVIS, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, | § | |
| CORRECTIONAL INSTITUTIONS DIV.,[1] | § | |
| RESPONDENT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Richard Lee McIntyre's petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge for a recommended disposition.  Upon review of the relevant pleadings and applicable law, the petition should be **DISMISSED**.

I.    BACKGROUND

The following summary of the trial evidence is taken verbatim from the unpublished opinion in McIntyre's direct criminal appeal:

> On September 9, 2011, Investigators Cody McKinney and Cody Moon of the Midlothian Police Department were working with a federal task force in the execution of a search warrant on a house. While searching the house, the investigators learned that the homeowner was expecting his marihuana supplier to make a delivery. The homeowner provided the investigators with the supplier's name—Pablo Vasquez—and a description of the vehicle the supplier drives.

---

[1] In May 2016, Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, Davis was "automatically substituted as a party."

Vasquez arrived while the investigators were still searching the house. Upon arrival, Vasquez was arrested for possessing a misdemeanor amount of marihuana.

In an effort "to cooperate and help himself out," Vasquez informed the investigators that "he could arrange for an ounce of methamphetamine to be delivered to Midlothian." The investigators allowed Vasquez to use his cell phone to contact his source. Vasquez communicated with his source—a person named Chappo—using text messages, which the investigators monitored. During the course of the communications, Chappo's cell phone started to "die," so Chappo began to use his girlfriend's cell phone. Vasquez identified Chappo's girlfriend as Amber.

In exchange for $1,400, Chappo agreed to deliver an ounce of methamphetamine. The parties initially agreed to meet at a Walmart parking lot; however, Chappo later asked to meet at a house instead. The investigators knew of a vacant house located at 920 Crockett Street in Midlothian, Texas, so they told Vasquez to direct Chappo to meet there.

According to Investigator McKinney, Vasquez parked his minivan in the driveway of the vacant house while the investigators parked out on the street in an undercover vehicle. Other law enforcement officers were parked around the corner "to help out with the takedown team whenever" Chappo arrived. The takedown team wore black, bulletproof vests that said "Police" on the front and back. Vasquez was instructed to stay inside his minivan until Chappo arrived.

After approximately twenty minutes had elapsed from the time law enforcement arrived at the vacant house, a red Ford F–150 pickup truck pulled into the driveway. A Hispanic male, Chappo, and a Caucasian female, Amber, exited the pickup truck from the passenger side. The takedown team subsequently approached the truck and ordered Chappo and Amber to the ground. Investigator McKinney approached the open passenger door and ordered [McIntyre], who was the driver of the pickup truck, to get out. [McIntyre] refused to comply. Investigator McKinney testified that it appeared as if [McIntyre] was holding something while gripping the steering wheel. Thereafter, Lieutenant Garland Wolf pulled [McIntyre] out of the vehicle. Because [McIntyre] appeared to be holding something, Investigator McKinney looked inside the pickup truck to see what [McIntyre] had dropped. Investigator McKinney saw "a Ziploc baggy with some type of white substance in it, a crystal substance" on the driver's side floorboard. He was certain that this was the methamphetamine that Vasquez had ordered. Subsequent testing confirmed Investigator McKinney's belief that the white, crystal substance was indeed methamphetamine. At this point, [McIntyre], Chappo, and Amber were arrested.

A search of the vehicle yielded several incriminating items. In particular, a cell phone, identified as belonging to [McIntyre], was found. The cell phone had a GPS-map function activated showing the location of 920 Crockett. In addition, law

Page 2 of 22

enforcement found amphetamine pills in a baggy in the seat console and a prescription bottle with [McIntyre]'s name on the label in the center console. Moreover, during a pat-down of [McIntyre]'s person, law enforcement found a pipe used for smoking methamphetamine and a baggy of methamphetamine weighing 3.25 grams in [McIntyre]'s pocket. The pipe had burn marks, indicating that it had been used. Furthermore, law enforcement found ledgers containing notes of narcotics transactions and an insurance card, which indicated that the pickup truck was [McIntyre]'s.

In his testimony, Investigator McKinney confirmed that the agreed delivery amount was twenty-eight grams of methamphetamine; however, based on field tests, law enforcement only found 24.7 grams of methamphetamine in the pickup truck. The seized drugs were packaged and sent to the lab for testing.

Lieutenant Wolf also testified about what happened that day. According to his testimony, Lieutenant Wolf also observed [McIntyre] with something in his hand while inside the pickup truck. As he attempted to apprehend [McIntyre], Lieutenant Wolf saw that [McIntyre] "made a motion towards the floorboard" and that after the vehicle "was free of any other occupants," he "did notice on the driver's side floorboard immediately adjacent to the area where he [McIntyre] had made that movement a clear cellophane or self-sealing plastic bag with a white type crystal substance in it." Lieutenant Wolf denied that [McIntyre]'s movement towards the floorboard was really toward the door handle.

Chris Youngkin, a forensic scientist at the Texas Department of Public Safety Crime Laboratory in Garland, Texas, stated that he tested the evidence collected from the crime scene. According to Youngkin, the pills found in the seat console were amphetamine and had a net weight of 1.94 grams. The bag found in [McIntyre]'s pocket contained 3.25 grams of methamphetamine, and the bag found on the floorboard of the pickup truck weighed 18.25 grams and contained methamphetamine.

*McIntyre v. State*, Nos. 10-12-00321-CR, 10-12-00322-CR, 10-12-00323-CR, 2013 WL 5773343, at *1–2 (Tex. App.—Waco Oct. 24, 2013, pet ref'd).

Subsequently, McIntyre was charged in Ellis County by three separate indictments with drug offenses, which were all consolidated for trial. In August 2012, a jury found McIntyre guilty of two counts of possessing a controlled substance (amphetamine and methamphetamine) in an amount greater than one gram but less than four grams, and he was sentenced to two years'

imprisonment in each case. *State v. McIntyre*, Nos. 36369CR and 36370CR (40th Dist. Ct., Ellis Cty., Aug 1, 2012). The jury also found him guilty in the third case of possessing more than four grams but less than 200 grams of methamphetamine with intent to deliver, and he was sentenced to 40 years' imprisonment and a $1,400 fine. *State v. McIntyre*, No. 36371CR (40th Dist. Ct., Ellis Cty., Aug 1, 2012). All three convictions were affirmed on direct appeal. *McIntyre*, 2013 WL 5773343, at *1. The Court of Criminal Appeals denied state habeas relief. *Ex parte McIntyre*, Nos. WR-83,581-01, WR-83,581-02, & WR-83,581-03 (Tex. Crim. App. Dec. 9, 2015) (denying without written order on findings of the trial court). That court also dismissed McIntyre's later habeas actions. *Ex parte McIntyre*, Nos. WR-83,581-04 & WR-83,581-05 (Tex. Crim. App. Feb. 3, 2016) (sentence discharged in Nos. 36369CR and 36370CR); *Ex parte McIntyre*, No. WR-83,581-06 (Tex. Crim. App. Feb. 3, 2016) (successive application in No. 36371CR).

In the instant federal petition, McIntyre complains of ineffective assistance of counsel, jury misconduct, trial court errors, and inadequacy of the state habeas proceedings. Doc. 3 at 5, 9-16; Doc. 4 at 3. Respondent argues that: (1) the Court lacks jurisdiction to consider any challenge to the convictions in cases 36369CR and 36370CR; (2) McIntyre's challenge to the conviction in case 36371CR lacks merit; and (3) his requests for discovery and an evidentiary hearing should be denied. Doc. 19; Doc. 36. McIntyre has filed a reply. Doc. 26; Doc. 41.

## II.    MCINTYRE IS NOT "IN CUSTODY" ON CASES 36369CR AND 36370CR

In Grounds 2 and 5, McIntyre challenges his convictions in Ellis County cause numbers 36369CR and 36370CR. However, the Court lacks subject matter jurisdiction to consider those claims, thus, they should be dismissed without prejudice.

Records reveal, and McIntyre does not dispute, that on September 8, 2013, he fully

discharged the two-year imprisonment terms imposed in Ellis County case numbers 36369CR

and 36370CR.  Doc. 19-1 at 1-2.  Thus, he is not now "in custody" pursuant to the judgments of

the state court in those cases, nor was he in custody when he filed the instant federal petition

challenging his convictions in those cases.  Consequently, this Court lacks jurisdiction to

consider his habeas challenge to those convictions.  *See* 28 U.S.C. § 2254(a) (providing federal

habeas jurisdiction "in behalf of a person *in custody* pursuant to the judgment of a State court

only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the

United States" (emphasis added)).

## III.    CLAIMS CHALLENGING REMAINING CONVICTION LACK MERIT[2]

A petitioner is not entitled to habeas corpus relief unless the state court's adjudication on

the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A petitioner bears the burden of establishing that he is entitled to relief.  *Woodford v.*

*Visciotti*, 537 U.S. 19, 25 (2002).  However, that burden is "difficult to meet," *Harrington v.*

*Richter*, 562 U.S. 86, 102, 105 (2011), because the state court's decision is reviewed under a

---

[2] The state-habeas-court record for cause number 36371CR is available at Doc. 21-38 through Doc. 21-41, and the reporter record is available at Doc. 21-19 through Doc. 21-29.

"highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted).

Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (quoting *Richter*, 562 U.S. at 102). Consequently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *see Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law" (internal quotation marks and citation omitted; emphasis in original)).

In addition, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance" under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citations omitted). In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101.

To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of

reasonableness." *Id.* at 689.  In evaluating an attorney's performance, there is a "strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance," or that under the circumstances the challenged action might be considered sound

trial strategy.  *Id.* at 689.  To establish prejudice, a petitioner additionally must demonstrate that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id.* at 694.

### A. Ineffective Assistance of Counsel at Trial

The state habeas court rejected McIntyre's claims that he received ineffective assistance

of counsel at trial.  Because McIntyre cannot overcome the "relitigation bar," he is not entitled to

relief on his claims.  *Thomas v. Vannoy*, 898 F.3d 561, 566 (5th Cir. 2018).

### *Ground 1 – counsel's alleged failure to inform McIntyre of his right to pursue an interlocutory appeal of adverse suppression ruling*

McIntyre maintains that he had the right to an interlocutory appeal of the pretrial denial

of his motion to suppress, and that counsel's failure to advise him about his right to appeal

amounted to ineffective assistance.  Doc. 4 at 3; Doc. 26 at 8-9.  McIntyre is wrong.  A "pretrial

motion to suppress evidence is nothing more than a specialized objection to the admissibility of

that evidence." *Black v. State*, 362 S.W.3d 626, 633-35 (Tex. Crim. App. 2012) (internal

quotation marks and citation omitted).  And because the "pretrial ruling on such a motion is

interlocutory in nature," a "trial court retains the authority to reopen a suppression hearing and

revisit its pretrial ruling thereon during the course of trial." *Id.*  Moreover, since the state court

of appeals rejected the substance of the suppression issue on direct appeal, McIntyre cannot

show that he was prejudiced.  As such, the state court's denial of relief on this ground was a

reasonable application of federal law and this claim lacks merit.

***Ground 2 – counsel's alleged failure to file a motion to dismiss***[3]

McIntyre also asserts that counsel rendered ineffective assistance when he failed to file a pre-trial motion to dismiss the amphetamine charge because McIntyre had a lawful prescription for the substance. Doc. 4 at 4; Doc. 26 at 11-12. However, the state habeas court rejected McIntyre's claim that trial counsel was ineffective for failing to file a motion to quash or to dismiss the indictment, finding that "[a] motion to quash or dismiss the indictment would not have provided Applicant the opportunity to present evidence to support his claim that he was not guilty of the offenses." Doc. 21-41 at 121. *See Carpenter v. State*, 477 S.W.2d 22, 23 (Tex. Crim. App. 1972) (declining to look beyond the face of indictment for supporting evidence where indictment was valid on its face); *Woods v. State,* 153 S.W.3d 413, 415 (2005) (emphasizing that "a pre-trial motion is to address preliminary matters, not the merits of the case itself"). As McIntyre's basis for dismissal of the indictment is his factual innocence of the amphetamine charge, such a motion would have been futile.

Consequently, because McIntyre has not demonstrated that the state court's application of *Strickland* was contrary to or an unreasonable application of clearly established federal law, his claim fails.

***Grounds 3 and 4 – counsel's alleged failure to investigate and interview witnesses***

McIntyre asserts that counsel was ineffective for failing to conduct a pretrial investigation into the facts of the case and interview his alleged co-conspirators "Chappo" and Amber Vanderzwart, auto-repair-shop owner Brooks, and the state's witnesses. Doc. 3 at 5; Doc. 9 at

---

[3] The Court liberally construes grounds 2 and 5 as raising claims challenging Petitioner's conviction in case 36371CR and Respondent subsequently filed her supplemental response addressing those grounds. Doc. 31; Doc. 36.

10.  The state habeas court rejected this argument, and, upon review of the record, this Court finds that the state court's decision was neither contrary to, nor involved an unreasonable application of, clearly established Federal law.  Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Specifically, as to Vanderzwart, who testified for the defense at McIntyre's trial, McIntyre surmises that "the jury disbelieved her testimony" because there was "no independent investigation" prior to trial.  Doc. 3 at 5.  McIntyre's defense rested on the credibility of Vanderzwart's testimony that McIntyre knew nothing about the methamphetamine that she possessed or the Midlothian drug deal in which she and Chappo planned to deliver one ounce of methamphetamine to the house at 920 Crocket Street.  Doc. 21-25 at 23-26, 28, 30 (R.R. Vol. 7). Vanderzwart testified that, after her car broke down in Farmers Branch, she called McIntyre, a stranger to her, who owned a tow-truck business in Saginaw, Doc. 21-25 at 8-9; that McIntyre agreed to tow her car from Farmers Branch to a mechanic in the Saginaw area and, since he had to make service runs in the area, drive her to pick-up her belongings from a motel in the Duncanville-Dallas area and take them back to her car, Doc. 21-25 at 10-11; and that she ultimately asked McIntyre to drive her and Chappo (whom they also had picked up with the belongings from the motel) to Midlothian so that Chappo's possessions could be dropped off at the Crocket Street address, Doc. 21-25 at 19-20, 28, 42-43.  Vanderzwart also testified that she: (1) sold methamphetamine for a living; (2) moved from motel to motel; and (3) on the day in question, had smoked methamphetamine off and on throughout the day, which blurred some of her memory.  Doc. 21-25 at 7, 21, 50, 71.

On this record, the state habeas court was well within the bounds of the law to reject McIntyre's mere supposition that counsel could have found evidence to corroborate Vanderzwart's testimony, such as "receipts of the repairs" to Vanderzwart's car and "the make and model" of her car (Vanderzwart testified that she had the car for about a year but did not remember its make or model, Doc. 21-26 at 49).  McIntyre contends that such evidence "could have bolstered the credibility of [Vanderzwart's] testimony" and "create[d] a reasonable probability of a different [out]come." Doc. 9 at 10.  McIntyre's mere supposition that evidence of an auto repair receipt and the make and model of Vanderzwart's car would have bolstered her credibility to the degree that it resulted in his acquittal, falls well short of his burden to establish prejudice, especially in light of the implausibility of Vanderzwart's story and her admissions that she was essentially a vagabond drug dealer, who was high on methamphetamine and, thus, memory-impaired at the time of the events she recounted.  *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (to demonstrate *Strickland* prejudice, the petitioner must show the witness would have testified at trial and the testimony would have been favorable); *see also Strickland*, 466 U.S. 668, 694 (to establish prejudice the petitioner must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different").

As to Chappo and Brooks, McIntyre has failed to present adequate factual support for his failure to investigate claim.  He vaguely asserts that, if counsel had interviewed them, he would have discovered "enough information and favorable evidence for [McIntyre's] alibi and defense." Doc. 3 at 5.  Allegations of a counsel's failure to investigate must state with specificity what the investigation "would have revealed and how it would have altered the outcome of the trial." *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000) (internal quotation marks and

citation omitted).  McIntyre asserts that Chappo could have testified that "he [Chappo] was the one in possession of the drugs," Doc. 3 at 5, and that Brooks, who repaired Vanderzwart's car, could have "provide[d] evidence favorable to Vanderzwart's testimony" and, thus, bolstered her credibility.  Doc. 3 at 5; *see also* Doc. 9 at 10-12.   However, McIntyre has failed to offer any evidence that either Brooks and Chappo (who could have asserted his Fifth Amendment privilege against self-incrimination) were available and willing to testify and that their testimony would have been favorable to him.  *See Evans*, 285 F.3d at 377; *Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008) ("a conclusory assertion is insufficient to show prejudice under . . . *Strickland*").  Indeed, as the court of appeals found, other evidence that directly linked McIntyre to the drugs, contradicts his assertions.  *See McIntyre*, 2013 WL 5773343, at *11-12.

Finally, McIntyre baldly asserts that counsel's interviews and investigation of the state officers' "allegations and charges" would have revealed "evidence that [McIntyre] wasn't in possession of the drugs," and better abled counsel to cross-examine Officer Kemp.  Doc. 3 at 5. McIntyre's argument is belied by the evidence of record.  As recounted by the state court of appeals, "law enforcement observed [McIntyre] drop a Ziploc bag containing an additional 18.25 grams of methamphetamine prior to being pulled out of the pickup truck."  *McIntyre*, 2013 WL 5773343, at *11.  Methamphetamine and a pipe used for smoking were also found in McIntyre's pocket during a pat-down search.  *Id.* at *2.  As before, McIntyre has offered no evidence of what further investigation and interviews of the officers would have revealed and how it would have altered the outcome of the trial.

Page 11 of 22

For the foregoing reasons, the state court's denial of relief on these grounds was a reasonable application of federal law, as well as reasonable determination of the facts from the evidence, and McIntyre cannot prevail.

### Ground 5 – counsel's alleged failure to call doctor

As to Dr. Anil Bangale, who allegedly prescribed to McIntyre the amphetamine he was convicted of illegally possessing, Doc. 3 at 10–11; Doc. 9 at 14-22, McIntyre contends that Bangale had been subpoenaed and was available to testify, Doc. 9 at 15. McIntyre further argues that counsel's failure to call Bangale as an "alibi" witness prejudiced him by "[l]eaving this damaging evidence available for the prosecution to use to connect and influence the jury [that] he was in illegal possession of this medication and the other drugs," hence linking him to the methamphetamine trafficking charge as an accomplice.[4] Doc. 3 at 10; *see also* Doc. 9 at 18; Doc. 41 at 1. McIntyre also avers that the lead prosecutor, Ricky Sipes, "threatened the defense attorney off the record that if the defense put the doctor on the stand to give testimony that petitioner was legally prescribed the medication adderall-amphetamine that [Sipes] would bring up in front of the jury petitioners [sic] criminal past." Doc. 3 at 10; *see also* Doc. 9 at 15; Doc. 41 at 1.

In her affidavit, Assistant District Attorney Lindy Beaty, Sipe's co-counsel at trial, averred:

> During the trial, Mr. Sipes learned that defense counsel intended to call a doctor to testify. After learning the doctor's name, Anil Bangale, I went to the website of the Texas Medical Board to confirm that the person was a licensed doctor in the State of Texas.

---

[4] Because it is not clear from the record whether McIntyre exhausted his current claim that the evidence of amphetamine possession influenced the jury verdict as to the charge of possession of methamphetamine with intent to deliver, it is addressed out of an abundance of caution.

The website confirmed that Dr. Bangale was a licensed doctor, but also contained information that Dr. Bangale had been disciplined and was currently being monitored by the Board for his failure to maintain adequate records and because he "prescribed unnecessary controlled substances to a known addict." I provided that information to defense counsel, Charles Slaton, before the doctor was called so that he would know that his witness would be cross-examined with that information. I did not make any threats that the State would offer the defendant's extraneous offenses if the doctor were called to testify.

Doc. 21-41 at 99.  Relying on Beaty's affidavit, the state habeas court denied this claim, finding:

12. Prosecutor Lindy Tober Beaty is known to the Court to be a credible person, and the Court finds that her affidavit is credible.

13. In addition, the Court takes judicial notice of the information contained on the website of the Texas Medical Board.

14. Trial counsel's decision not to present Dr. Anil Bangale as a witness for the defense was reasonable trial strategy in light of the information the State had presented to defense counsel off the record and had intended to use for cross-examination.

15. The information the State presented to defense counsel was that Dr. Bangale had been subject to discipline from the Texas Medical Board for reasons including that Dr. Bangale had "prescribed unnecessary controlled substances to a known addict."

16. The doctor's testimony, even if presented, would have had no bearing on the cases involving methamphetamine, for which he did not claim to have issued a prescription.

Doc. 21-41 at 121.  On this record, counsel's decision not to call Bangale and risk the revelation

of the State's impeachment evidence could easily be considered a sound strategic decision;

indeed, it is presumed so.  Strickland, 466 U.S. 668, 689.

Moreover, given the presumption of correctness afforded the state habeas court's

credibility findings and factual findings, *Reed v. Stephens*, 739 F.3d 753, 784 (5th Cir. 2014),

McIntyre's argument to this Court that it was Sipes and not Beaty who threatened defense

counsel off the record to prevent Bangale's testimony, Doc. 3 at 10; Doc. 9 at 18-19, is of no moment. The same is true of McIntyre's scurrilous claim that the state court "conspire[ed] to conceal the true facts of this allegation" by failing to request an affidavit from his trial counsel, Doc. 3 at 10. McIntyre simply offers no evidence in support. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). Just as before, McIntyre has failed to "set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative").

Consequently, the state habeas court's denial of McIntyre's claim that counsel was ineffective for failing to call Bangale as a witness was neither an unreasonable application of federal law nor an unreasonable determination of the facts from the evidence. Thus, this claim fails.

### Ground 6 – counsel's alleged failure to object to the prosecutor's cross-examination

McIntyre argues that Vanderzwart's testimony on cross-examination that she twice visited McIntyre in jail "incriminated him in front of the jury," and that defense counsel had "no sound strategy" for failing to object to the prosecutor's question that elicited the testimony. Doc. 3 at 11. He asserts that the mere "mention of him in jail violated his 5th and 14th Amendment

right to due process" because it "undermine[d] the presumption of innocence." *Id.* However, in rejecting this claim, the state habeas court found that the "prosecutor's question to [Vanderzwart] regarding how many times she visited Applicant in jail did not unduly prejudice Applicant before the jury and was not prosecutorial misconduct." Doc. 21-41 at 121. This Court concurs. In light of the substantial evidence of McIntyre's guilt, there is no indication that the fleeting and indirect reference to McIntyre's pretrial confinement, Doc. 21-26 at 47 (R.R. Vol. 8), had the effect of denying him the presumption of innocence. McIntyre's argument to the contrary is premised on nothing more than speculation. On this record, the state court's denial of relief was a reasonable application of federal law and this claim fails.

### Ground 7- counsel's filing of a frivolous motion for new trial

Next, McIntyre argues counsel rendered ineffective assistance by filing a frivolous motion for new trial. He claims counsel failed to timely obtain an affidavit from McIntyre's daughter averring that juror Timothy Rawlings had been at one of McIntyre's earlier bond hearings. Doc. 3 at 11. The state habeas court rejected the claim, finding:

> 18. The affidavit of Ame McIntyre, Applicant's daughter, is dated October 10, 2012, more than sixty days after the judgment and sentence in the cause, which is contained in the Court's file, and well past the time for filing a motion for new trial.
>
> 19. The affidavit does not aver that Ame McIntyre informed trial counsel about her concerns during the time for filing a motion for new trial.
>
> 20. Trial counsel could have reasonably believed that the claim was not truthful or unlikely to be believed in light of the fact that it was the daughter of Applicant that claimed to recognize a stranger from more than five months before the affidavit was dated.
>
> 21. The Court finds the affidavit of Timothy Rawlings, submitted by the Respondent, to be more credible than the affidavit of Ame McIntyre.

22. Mr. Rawlings was not present at the bond hearing in April 2012, or any other bond hearing, and did not know Applicant before jury selection in July 2012.

Doc. 21-41 at 121-22.

Again, the state court's credibility determination is entitled to a presumption of correctness, 28 U.S .C. § 2254(e)(1), and McIntyre has not produced clear and convincing evidence to rebut the same. *Fields v. Thaler*, 588 F.3d 270, 278 (5th Cir. 2009). Moreover, applying the appropriate deference and having independently reviewed McIntyre's claim and the state court record, the Court concludes the state court's application of *Strickland* was reasonable. *See Ross*, 694 F.2d at 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value."). Thus, even if McIntyre could demonstrate deficient performance, he has not established a reasonable probability that, but for counsel's error, the result of the proceeding would have been different, and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable. *See Richter,* 562 U.S. at 104. Accordingly, this claim lacks merit.

### Ground 9 – counsel's failure to request jury instruction

McIntyre asserts counsel was deficient in failing to request a jury instruction on the admissibility of evidence under Texas Code of Criminal Procedure article 38.23(a). Doc. 3 at 13. In a case where the evidence raises the issue, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions" of the Constitution and laws of Texas or of the United States, "the jury shall disregard any such evidence so obtained." TEX. CODE CRIM. PROC. art. 38.23(a). However, to be entitled to a jury

instruction under article 38.23, there must be a genuine dispute about a material issue of historical fact. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) ("When a disputed, material issue of fact is successfully raised, the terms of the statute are mandatory, and the jury must be instructed accordingly." Conversely, "[w]here the issue . . . does not involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court."). Here, as the state habeas court concluded, McIntyre "does not point to any fact issue . . . regarding the admissibility of the evidence"; consequently, "no jury instruction on that issue was necessary." Doc. 21-41 at 122. McIntyre only reiterates his claim that at the time of the seizure, he "had committed no offense in the presents [sic] or sight of any of the arresting officers." Doc. 3 at 12-13.

Counsel's failure to request a jury instruction that the evidence did not support was not ineffective assistance. Accordingly, the state court's denial of relief on this ground was a reasonable application of federal law, and this claim fails.

### B.  Ineffective Assistance of Counsel on Appeal – Ground 8

McIntyre contends his appellate counsel failed to adequately brief the suppression issues on direct appeal. Doc. 3 at 12. Specifically, he claims counsel did not present sufficient legal authority addressing the purported unlawful detention and "did not follow the Rules of Appellate Procedure" with respect to sufficiency of the evidence. *Id.* Even assuming deficient performance, however, McIntyre cannot show the requisite prejudice – namely that the result of the appeal would have been different. *See Smith v. Robbins*, 528 U.S. 259, 285-286 and n. 14 (2000) (evaluating ineffectiveness claim on appeal under *Strickland* and noting performance component need not be addressed if it is easier to dispose of claim due to lack of prejudice). As

the state habeas court found, McIntyre's "challenge to the Court's ruling on the motion to suppress was fully considered and rejected" by the court of appeals. Doc. 21-41 at 122. Moreover, "no issues were procedurally defaulted," and McIntyre "was not prejudiced by any failure to raise factual sufficiency." *Id.* On this record, McIntyre has not demonstrated that the state court's decision rejecting his claim of ineffective assistance of appellate counsel was unreasonable, thus, this ground for relief fails.

### C. Jury Misconduct – Grounds 10-12

McIntyre's contention that Juror Rawlings engaged in misconduct by withholding evidence during voir dire that he was present at the pretrial bond hearing has no merit. Doc. 3 at 13. As discussed *supra*, Rawlings submitted an affidavit (which the state habeas court found credible) denying that he was present at McIntyre's bond hearing and affirming that he did not know McIntyre prior to trial. Doc. 21-41 at 115; Doc. 21-41 at 122. Again, the state habeas court's credibility determination is entitled to a presumption of correctness, 28 U.S .C. § 2254(e)(1), and again McIntyre has not produced clear and convincing evidence to rebut the same. Indeed, McIntyre's proposition—that Rawlings attended his previous bail hearing and was later randomly selected to be part of the venire and then selected as a juror—is nothing short of fanciful.

In addition, McIntyre's bare assertions that Rawlings professed knowledge of parole laws during jury deliberation and was unfit to be a juror because of misconduct stemming from the termination of his city employment are plainly conclusory. Doc. 3 at 13-14; s*ee Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990)* (mere conclusory allegations on a critical issue are insufficient to raise a constitutional claim). The state habeas court rejected these claims finding "no

competent evidence of jury misconduct." Doc. 21-41 at 122. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) ("Under Texas law, 'not every mention of parole during jury deliberations calls for reversal.' Only jury misconduct that deprives the defendant of a fair and impartial trial warrants granting of a new trial." (quoting *De La Rosa v. Texas,* 743 F.2d 299, 304 (5th Cir.1984))). And finding no basis to do so, this Court correctly rejects McIntyre's invitation to substitute its judgment for that of the state court. Because the state court's denial was a reasonable application of clearly established federal law, these claims lack merit.

### D. Trial Court Errors – Grounds 13-14

As the state habeas court concluded, McIntyre does not show any prejudice stemming from the trial court's decisions to: (1) appoint trial counsel as appellate counsel, (2) permit his previous retained counsel to practice law in a court where counsel also acted as a Municipal Judge, and (3) allow retained counsel to withdraw based on McIntyre's failure to pay attorney's fees. Doc. 21-41 at 122. McIntyre contends he "was denied the opportunity for a professional review of the entire Trial record" because his "attorney would not lodge an objection against his own representation of errors he made during the pretrial and Trial proceedings." Doc. 3 at 14-15. However, ineffectiveness claims are better suited for resolution in habeas corpus proceedings rather than on direct appeal, and McIntyre points to no other issue that counsel failed to raise on direct appeal. Moreover, McIntyre fails to identify any deficient or prejudicial action of his initial retained counsel. Therefore, the state court's rejection of these claims was objectively reasonable.

### E.  Adequacy of State Habeas Proceedings – Ground 15

McIntyre challenges at length the adequacy of the state habeas proceedings, claiming the state court denied him relief without holding an evidentiary hearing or requiring trial counsel to file an affidavit.  Doc. 3 at 16; Doc. 12 at 1; Doc. 26 at 3.  He also avers the state court adopted the findings of fact and conclusions of law prepared by the state prosecutor without giving McIntyre "notice and an opportunity to be heard."  Doc. 26 at 2-3.  Infirmities in collateral proceedings, however, are not grounds for federal habeas relief and, therefore, this claim fails. *Rudd v. Johnson*, 256 F.3d 317, 319-320 (5th Cir. 2001).

## IV.    EVIDENTIARY HEARING AND DISCOVERY NOT REQUIRED

McIntyre requests an evidentiary hearing to develop his claims.  Doc. 3 at 7; Doc. 12 at 1; Doc. 26 at 26.  He reiterates that no affidavit was obtained from his trial counsel and lead prosecutor Sipes.  Doc. 41 at 2.  However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)).  Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court. McIntyre cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court.  Accordingly, he is not entitled to an evidentiary hearing.

McIntyre has also submitted a discovery request.  Doc. 23.  He requests the Court to order his trial counsel and the lead prosecutor to submit an affidavit addressing the allegations in his federal petition.  *Id.*  However, McIntyre has not demonstrated good cause to permit discovery.  *See* Rule 6 of the RULES GOVERNING SECTION 2254 PROCEEDINGS FOR THE UNITED

STATES DISTRICT COURTS (granting district courts discretion to authorize discovery only upon a showing of good cause); *see also Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997) (addressing good cause standard). "[T]o establish good cause, the petitioner must demonstrate that 'a factual dispute, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing.'" *Lave v. Dretke*, 416 F.3d 372, 381 (5th Cir. 2005) (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir.1994)). Thus, he is not entitled to conduct discovery.

## V.    CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus should be **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction as to McIntyre's convictions in Ellis County case numbers 36369CR and 36370CR, and **DISMISSED WITH PREJUDICE** as meritless as to his remaining claims.

**SO RECOMMENDED** February 11, 2019.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).